Filed 2/16/16  T.K. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| T.K.,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF RIVERSIDE COUNTY,<br><br>     Respondent;<br><br>RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>     Real Party in Interest. | E064709<br><br>(Super.Ct.No. RIJ118705)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Tamara L. Wagner,

Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Petition denied.

Anastasia M. Georggin for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

Petitioner T.K. (Mother) is the mother of six-month-old twin baby girls, S.K. and T.K. Mother seeks an extraordinary writ to vacate the orders of the juvenile court denying reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1] (Cal. Rules of Court, rule 8.452.) On appeal, Mother contends the juvenile court erred in denying her services under section 361.5, subdivisions (b)(10), (b)(11), and (b)(13), and not finding reunification services is in the best interest of the children.[2] We reject these contentions and deny the petition.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Prior Dependency Cases*

Mother has three older children, N.K., I.K., and A.K., who were all removed by the Riverside County Department of Public Social Services (DPSS) from Mother's custody due to her drug abuse and substantiated allegations of severe neglect. N.K. was removed from Mother's care in September 2009 after he tested positive for cocaine and marijuana at birth and Mother had failed to seek prenatal care or secure provisions for the child. Following a jurisdictional/dispositional hearing in October 2009, Mother was provided with reunification services; however, her services were terminated in May 2010

---

[1] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] The father of the babies is not a party to this petition.

due to Mother's lack of participation and compliance. Mother's parental rights as to N.K. were terminated in October 2010, and N.K. was formally adopted in May 2011.

I.K. was removed from Mother's care in April 2011 after he too tested positive for cocaine and marijuana at birth, and Mother had failed to seek prenatal care or secure provisions for the child. Mother claimed she had received prenatal care in Georgia, that she had used marijuana and cocaine three times during the pregnancy, and denied having a problem with addiction. However, according to hospital staff, I.K. was showing signs of withdrawal. At a June 2011 contested jurisdictional/ dispositional hearing, Mother was denied services due to her lack of participation and compliance with DPSS. In November 2011, Mother's parental rights as to I.K. were terminated and the child was formally adopted in November 2012.

A.K. was removed from Mother's custody in March 2013 after Mother gave birth to A.K. at 36 weeks gestation in a motel room. Mother had received limited prenatal care and had not secured provisions for her child. At the time of delivery, Mother had tested positive for cocaine and marijuana. A.K. had also tested positive for cocaine and was admitted to the Neonatal Intensive Care Unit (NICU) for respiratory distress. Mother was denied reunification services at a May 2013 jurisdictional/dispositional hearing. Mother's parental rights as to A.K. were terminated in December 2013, and the child was formally adopted in June 2014.

B.     *Current Dependency*

On August 17, 2015, DPSS received an immediate response referral after Mother gave birth to twin girls at 34 weeks gestation and tested positive for cocaine at the time of delivery.  When confronted about the positive drug screen, Mother blamed the hospital for giving her cocaine in her epidural.  Hospital staff also overheard Mother on the phone trying to get her visitors to bring drugs to the hospital for her.  Mother had recently been released from jail due to grand theft charges, was on probation, and had no prenatal care while in jail.  Mother reported that she desired to enter a treatment program to address her drug problems and keep her girls.  She was observed as being anxious in the hospital and had threatened to leave against medical advice.

Mother had been visiting her newborn twin babies at the NICU, holding them, and engaging in proper bottle feedings.  The twins were deemed preterm and would not be discharged from the hospital until they could fully thrive on their own.  The twins' urine drug screens showed negative results for drugs; however, the results of the twins' meconium samples indicated S.K. tested positive for cocaine and marijuana and T.K. tested positive for cocaine.

Mother had no provisions for support.  She indicated that she would be staying with a male friend in San Jacinto but could not provide the friend's address until she got permission from him.  She was not currently working, was estranged from her family, led

4

a transient lifestyle, and relied on her friends for support.[3] She later reported that she would be staying with a male friend in Riverside, but could not provide an exact address. Mother admitted to having a long criminal history.[4] She also admitted to having a lengthy history of abusing cocaine, but maintained she was currently sober. In regard to the drug results, Mother explained that she had a "hit from her friends [*sic*] 'cigarette' on or about August 13, 2015" and had "realized it was a marijuana joint laced with other drugs." She was concerned she had smoked drugs and wanted to make sure she was not harming her babies, so she went to her probation officer and asked to be drug tested on August 14, 2015. The results were positive for cocaine. Mother was then arrested for violating her probation; however, because she went into labor, her probation officer took her to the hospital instead of jail. She reiterated that she was unaware she had smoked drugs on August 13, 2015, and maintained that she had been sober for about a year and a half. She indicated that she had never participated in drug treatment services in the past despite having been asked to do so in her prior dependency cases, but stated that she was willing to enter a substance abuse program this time and expressed her desire to comply

---

[3] Mother also asserted that the father of the babies is a friend who went by the street name " 'Solo.' " She was not sure how to find him and could not provide any contact information for him. Solo was aware of Mother's pregnancy but was asking for a paternity test as he did not believe he was the father. Mother later disclosed the possibility of a man named " 'Mack' " to be the father of the babies.

[4] Mother's criminal history included convictions for grand theft, burglary, shoplifting, resisting a peace office, and numerous offenses for being under the influence of a controlled substance, unlawful possession of an opium pipe or drug paraphernalia, and loitering in public places with intent to commit prostitution.

with her probation officer. The social worker advised Mother to seek inpatient treatment and provided Mother with a list of services.

The twins were taken into protective custody on August 18, 2015. On that same day, DPSS filed a petition on behalf of the twins pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provisions for support) based on Mother's chronic and unresolved substance abuse issues, Mother's use of drugs while pregnant, Mother's inability to provide for a safe and stable home, Mother's criminal history, Mother's failure to benefit from prior services in N.K.'s case, Mother's denial of services in I.K. and A.K.'s cases, and alleged father's unknown whereabouts. The petition was subsequently amended on August 20, 2015, with allegations similar to the original petition.

The twins were formally detained at the August 21, 2015 detention hearing, and maintained at the hospital. Mother was provided with services, such as parenting education, counseling, substance abuse, and drug testing. Mother was also provided with supervised visitation two times a week for two hours and ordered to drug test prior to each visit.

The social worker recommended that the allegations in the first amended petition be found true and that Mother be denied reunification services pursuant to section 361.5, subdivisions (b)(10), (b)(11), and (b)(13). Mother admitted to using cocaine eight or nine times while pregnant with the twins. She explained that she began using marijuana at the age of nine and cocaine at the age of 14 years. She last used drugs on August 26, 2015,

before she entered the Cedar House inpatient substance abuse treatment facility. S.K. was placed in a foster home on September 1, 2015, and T.K. was placed with her sister following her discharge from the hospital on September 4, 2015. Since the detention hearing, Mother had visited the twins three times, and was observed to be appropriate during the visits.

The contested jurisdictional hearing was held on September 23, 2015. At that time, the juvenile court granted Mother's counsel's request to continue the dispositional hearing. The court thereafter found the allegations in the first amended petition true.

Mother had completed 40 days of treatment at Cedar House on October 5, 2015, and informed the social worker that she would be enrolling in a sober living program. However, since completing her treatment program, Mother relapsed and failed to show progress in maintaining her sobriety. She also failed to regularly visit her children. The social worker reminded Mother about the service referrals and informed Mother that her visits would be held at the DPSS office with the next visit scheduled on October 6, 2015. Mother, however, failed to appear for her October 6 visit, and when contacted by a social worker the following day, Mother apologized and admitted to relapsing. Mother again failed to show up for her October 8 and 13 scheduled visits. The social worker continued to recommend that Mother be denied reunification services pursuant to section 361.5, subdivisions (b)(10), (b)(11), and (b)(13).

Meanwhile, the twins remained together in a foster home. They were under the care of a physician for gastroesophageal reflux disease (GERD) and were having feeding

issues that required them to see a doctor every two weeks. The foster mother ensured the twins attended all of their appointments and administered all of their prescribed medications.

The dispositional hearing was held on October 22, 2015. Mother eventually appeared and testified that since the twins' detention, she had enrolled in a substance abuse program, completed the Cedar House 40-day inpatient program, and she was enrolled in an outpatient program through the Mommies and Me (Mom's program). She also stated that she was drug tested five times while at Cedar House; that all the tests were negative for drugs; and that she saw her case manager once a week at Cedar House. She further explained that she was in the process of taking parenting and anger management classes at the Mom's program and that she had a Narcotics Anonymous (NA)/Alcoholics Anonymous (AA) sponsor. Mother claimed that she had benefitted from the Cedar House program and wished she could have stayed longer because she was not ready to leave after the time limit expired. She explained that she was now ready to change her life; that even though she had relapsed a week ago, she was back on the right path; and that completing Cedar House was the first time she had made progress in combating her substance abuse and was willing to do everything the court ordered. Mother believed that she could benefit from services, follow her case plan, and maintain her sobriety. Mother further believed the twins had a bond with her, but also stated they may have a bond with the foster mother due to the time they have been away from her.

In support of reunification services, Mother's counsel also submitted certificates of completion for NA/AA, a letter from Cedar House, and proof of Mother's enrollment into the Mom's program. The letter from Cedar House dated September 13, 2015, indicated that Mother entered "detox treatment" on August 26, 2015, and then started a residential program on September 2, 2015. The letter further noted that Mother had "remained open minded and willing to take suggestions"; that Mother had been "working towards making positive life style changes for herself and her family"; that Mother had shown a "very positive attitude and outlook"; that Mother had been participating in all her group meetings and was "always willing to share and give positive feedback to her peers"; and that Mother had begun to work on self-exploration, learning about recovery, and implementing and using her coping skills in her daily life.

Following argument, the juvenile court declared the children dependents of the court and denied Mother services pursuant to section 361.5, subdivisions (b)(10), (b)(11), and (b)(13), noting Mother had a "very, very long history [of abusing drugs], and 40 days [in a detox program] isn't going to do it." The court found Mother to be "very honest and candid" and encouraged Mother to maintain and continue obtaining the assistance she required. The court also noted that "relapse is a part of recovery, and [Mother's] honesty that [she] did relapse just last week, even after doing that residential program, tells [the court] that—the letter [from Cedar House] itself indicates it was a detox program—tells [the court] that [Mother is] going to need something more intensive because of [Mother's] history . . . ."

II

DISCUSSION

A. *Denial of Reunification Services Pursuant to Section 361.5*

Mother argues the juvenile court erred in denying her reunification services under section 361.5, subdivisions (b)(10), (b)(11), and (b)(13). She claims that she made reasonable efforts to address the problems that led to the removal of the twins' half siblings. We disagree.

1. Standard of Review

"A court reviews an order denying reunification services under section 361.5, subdivision (b) for substantial evidence. [Citation.]" (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 (*Cheryl P.*).) "In making this determination, we must decide if the evidence is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the court's order was proper based on clear and convincing evidence. [Citation.]" (*Curtis F. v. Superior Court* (2000) 80 Cal.App.4th 470, 474; *Amber K. v. Superior Court* (2006) 146 Cal.App.4th 553, 560 [Fourth Dist., Div. Two].) "All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact.' [Citations.]" (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 600 (*Francisco G.*).) The party challenging

10

the ruling of the lower court has the burden to show that the evidence is insufficient to support the ruling.  (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

2.      Mother Has Not Made Reasonable Efforts to Treat Her Problems

"There is a presumption in dependency cases that parents will receive reunification services.  [Citation.]  Section 361.5, subdivision (a) directs the juvenile court to order services whenever a child is removed from the custody of his or her parent unless the case is within the enumerated exceptions in section 361.5 subdivision (b).  [Citation.]  Section 361.5, subdivision (b) is a legislative acknowledgement 'that it may be fruitless to provide reunification services under certain circumstances.'  [Citation.]"  (*Cheryl P.*, *supra*, 139 Cal.App.4th at pp. 95-96, italics omitted; see *Francisco G.*, *supra*, 91 Cal.App.4th at p. 597.)

Under section 361.5, subdivision (b), services may be denied if the court finds by clear and convincing evidence "[t]hat the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 . . . and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian. . . .  [¶]  That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed . . . and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat

11

the problems that led to removal of the sibling or half sibling . . . ." (§ 361.5, subds. (b)(10), (11).)

"Thus, section 361.5, subdivision (b)(10) has two prongs or requirements: (1) the parent previously failed to reunify with a sibling of the child; and (2) the parent failed to make reasonable efforts to correct the problem that led to the sibling being removed from the parent's custody." (*Cheryl P.*, *supra*, 139 Cal.App.4th at p. 96, italics omitted.) Similarly, section 361.5, subdivision (b)(11), has two prongs: the first one is that parental rights were severed as to a sibling of the child, and the second prong is the same as in subdivision (b)(10). (§ 361.5, subd. (b)(11).) "The 'no reasonable effort' clause provides a means of mitigating a harsh rule that would allow the court to deny services based only upon the parent's prior failure to reunify with the child's sibling 'when the parent had in fact, in the meantime, worked toward correcting the underlying problems.' [Citation.]" (*Cheryl P.*, *supra*, 130 Cal.App.4th at p. 97.)

"The reasonable effort requirement focuses on the extent of a parent's efforts, not whether he or she has attained 'a certain level of progress.' [Citation.] 'To be reasonable, the parent's efforts must be more than "lackadaisical or half-hearted." ' [Citations.] However, '[t]he "reasonable effort to treat" standard "is not synonymous with 'cure.' " ' [Citation.]" (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.) The court may "consider the duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the focus of the

12

inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the reasonableness of the effort made." (*Id.* at p. 914.)

Mother had her reunification services terminated as to one of the twins' half siblings, N.K., on May 18, 2010. She was subsequently denied services due to her unresolved substance abuse issues for two of the twins' half siblings on June 30, 2011 and May 1, 2013. Parental rights to the three different half siblings were likewise terminated on three separate occasions—October 26, 2010, November 1, 2011, and December 9, 2013.

The problems that led to the removal of the twins' half siblings are Mother's extensive and long-term drug use, including using drugs while pregnant, in addition to her unstable, transient lifestyle, and criminal behavior. The evidence of the efforts Mother has made to address those problems is as follows: Mother testified that she had completed a 40-day inpatient treatment program at Cedar House, tested negative for drugs five times while at Cedar House, enrolled in the Mom's program, and had a NA/AA sponsor. She also submitted certificates of completion from her NA/AA program and a letter from Cedar House attesting to her progress. However, despite her years long and extensive drug abuse problem, Mother had failed to enroll in an extensive drug treatment program, and had not attended any follow-up or aftercare programs. In addition, Mother relapsed a week prior to the dispositional hearing, failed to appear three times for her scheduled visits, and had still not begun any parenting programs.

Moreover, there is no indication that Mother had stable housing, a job or prospects of securing employment, or a means to support herself, much less her children. We find substantial evidence shows that Mother did not make reasonable efforts to address the problems underlying the twins' half siblings' removals.

Because we uphold the juvenile court's orders based on section 361.5, subdivisions (b)(10) and (b)(11), we need not address Mother's challenge to the findings under subdivision (b)(13).

### B.   *Best Interest of the Children*

Mother also briefly contends that the juvenile court abused its discretion in not finding reunification is in the best interest of the children. In support, she asserts that she had maintained visits, was appropriate during visits, fed and held the twins during visits with no noted concerns, and had a "strong bond" with her young children as the twins recognized her voice.

Section 361.5, subdivision (c), provides that a court shall not order reunification services for a parent described in subdivisions (b)(10) and (b)(11) unless it finds by clear and convincing evidence that reunification services are in the child's best interest. A reviewing court will not disturb a court's ruling in a dependency proceeding " ' "unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

Mother has not shown the court abused its discretion in denying her services. She did not present any evidence to show it would be in the twins' best interest to offer services and delay providing permanency for the twins. Mother admitted to relapsing shortly after completing her 40-day inpatient drug treatment program at Cedar House, approximately one week prior to the dispositional hearing. She also failed to visit her children following her discharge from Cedar House on three different dates. Moreover, Mother admitted that the twins may also have a bond with their foster mother due to the length of time they have been away from Mother. The court did not abuse its discretion in not finding it would be in the best interest of the twins to offer services.

III

DISPOSITION

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ            
P. J.

We concur:


McKINSTER        
        J.


MILLER           
        J.

15